IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES A. GRAHAM, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 1:11CV00020 SWW |
| | * | |
| ENTERGY ARKANSAS, INC., | * | |
| | * | |
| Defendant. | * | |

**Memorandum Opinion and Order**

Before the Court is defendant's motion for summary judgment[1] to which plaintiff responded. Defendant filed a reply. For the reasons stated, the Court finds the motion should be granted.

**Background**

Plaintiff James A. Graham ("Graham") worked for defendant Entergy Arkansas, Inc. ("Entergy") from about July 7, 1979, until April 1, 2010. On or about August 28, 2009, Graham had surgery on his right shoulder.[2] He was on short-term disability from June 2009 to December 2009, and then on long-term disability. Graham alleges Entergy made it clear that he would not be allowed to return to work if he was not 100%. In February 2010, Graham's doctor released him for work with a 90% rating on his right shoulder. He says his supervisor told him he would not be allowed to return to work at anything less than 100%. Graham claims he was forced into early retirement on April 1, 2010, because his long-term disability ran out and Entergy would not allow him to return to work.

---

[1] The Court converted the motion to dismiss to a motion for summary judgment. Docket entry 9.

[2] Graham had surgery on his left knee in 1980 and on his left shoulder in 2001.

Graham filed a charge of discrimination on December 22, 2010, alleging discrimination on the basis of age and disability. The Equal Employment Opportunity Commission ("EEOC") dismissed the charge, finding it was not timely filed. After receiving his notice-of- right-to-sue letter, Graham filed the complaint before the Court on March 10, 2011, asserting Entergy violated the Americans With Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and the Arkansas Civil Rights Act ("ACRA"). Entergy moves for summary judgment on the basis that Graham's claims are time barred.

## Standard of Review

Federal Rule of Civil Procedure 56 (a) provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir.1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)(citations omitted). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." *Arnold v. Nursing and Rehab. Ctr. At Good Shepherd, LLC,* 471 F.3d 843, 845–6 (8th Cir.2006)(internal citation omitted).

**Discussion**

To maintain a federal civil action under the ADEA and the ADA, a plaintiff must timely file a charge of discrimination with the EEOC. 29 U.S.C. § 626(d)(2); 42 U.S.C. § 12117(a). The charge must be filed within 180 days of the date on which the alleged unlawful employment practice occurred. 29 U.S.C. § 626(d)(1); 42 U.S.C. § 12117(a).[3] In his EEOC charge, Graham states that Entergy told him in June 2009 that he could not return to work because he was not 100%. He went on short term disability and in December 2009 went on long term disability because he was not 100%. He says that in March 2010, Entergy still would not allow him to return to work, and that he was forced to retire on April 1, 2010. His first retirement check was dated August 1, 2010.[4] Graham filed his charge of discrimination on December 22, 2010.

Entergy argues the 180-day filing period began to run in February 2010 when Graham alleges he was told he could not return to work unless he was 100%. Entergy argues that even if the filing period did not begin to run until April 1, 2010, when Graham says he was forced into retirement, his charge was untimely. Graham asserts that the 180 days did not begin to run until August 1, 2010, when he received his first retirement check because he failed to discover or realize his injury until then.

The 180-day filing period begins to run with the date the discriminatory acts happen, not when their effects are felt. *See Delaware State College v. Ricks*, 449 U.S. 250, 259-60 (1980)("the proper focus is upon the time of the *discriminatory acts,* not upon the time at which the *consequences* of the acts became most painful" (emphasis in original)). In *Cooper v. St. Cloud*

---

[3]The ADA adopted the procedural requirements of Title VII, including the EEOC filing requirement within 180 days.

[4]Docket entry 2-1 (Charge of Discrimination); docket entry 19 at p. 20.

*University*, 226 F.3d 964 (8th Cir. 2000), the Eighth Circuit held the limitations period began to run when the university told the professor he would be terminated unless he obtained his PhD. Like Graham who could have become 100%, the professor could have obtained his PhD. But the law is clear that the statute begins to run when the discriminatory acts happen. In *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 108 (2002), the United States Supreme Court explained the reasoning behind this time limit, noting that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Id*. at 108 (quoting *Mohasco Corp. v. Silver,* 447 U.S. 807 (1980)). "By choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." *Id.* at 109. "The limitations period, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protects employers from the burden of defending claims arising from employment decisions that are long past." *Ricks*, 449 U.S. at 256–57.

The Court finds there is no genuine issue of material fact in dispute as to whether Graham failed to file a timely charge. The evidence is undisputed that Entergy told Graham he would not be allowed to return to work if he were not 100%. Both the EEOC charge and Graham's affidavit[5] establish that he knew about the 100% rule some time between June 2009 and August 2009. If insisting that he be 100% to return to work violated the ADA, the law was violated in June 2009, or August 2009, or February 2010, all times when Graham says he was informed he could not return to work unless he was 100%. Even if Entergy's communications to Graham in 2009 or in February 2010 did not trigger the limitations period, Graham admits he was forced to retire on April 1, 2010.

---

[5]Docket entry 14, pp. 2-3.

4

He did not file his EEOC charge until December 22, 2010, more than 180 days after his forced retirement on April 1, 2010, allegedly because of his disability and age.[6]

"The filing of a timely charge with the EEOC is not a jurisdictional prerequisite to a suit in federal court. Rather, it is a condition precedent and, 'like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.' *Zipes v. Trans World Airlines,* 455 U.S. 385, 393 (1982). 'It is clear that equitable tolling is premised on the plaintiff's excusable neglect, which may or may not be attributable to the defendant.' *Anderson v. Unisys Corp.,* 47 F.3d 302, 306 (8th Cir.), *cert. denied,* 516 U.S. 913 (1995); *see also Dring,* 58 F.3d at 1329 ('[E]xcusable ignorance may provide the basis for the proper invocation of the doctrine of equitable tolling.')." *Lawrence v. Cooper Communities, Inc.*, 132 F.3d 447, 451 (8th Cir. 1998). "[W]hen a reasonable person in the plaintiff's situation would not be expected to know of the existence of a possible ADEA violation, this excusable ignorance may provide the basis for the proper invocation of the doctrine of equitable tolling." *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1328 (8th Cir. 1995).

Graham argues he is entitled to equitable modification of the limitations period because Entergy did not properly post EEOC regulations and procedures pursuant to 29 U.S.C. § 627 and because he was not represented by an attorney, did not have knowledge of the law, and did not realize the unlawfulness of Entergy's action until late 2010.

Graham alleges Entergy failed to properly post EEOC regulations in conspicuous places as required by law. He claims that most of his time was spent in the machine shop, on the turbine deck, and other locations around the physical plant. He took his breaks in the break room closest to where he was working. Graham says no EEOC notices were posted in the break rooms or other locations

---

[6]In a complaint Graham made to the Occupational Safety and Health Administration, he said he was forced to retire on April 1, 2010, because of alleged whistle blowing

which he frequented and, therefore, he was unaware of his rights under the ADA and ADEA. In support of its motion, Entergy submits the affidavit of Gaylan Hayes, the general manager of the plant where Graham worked until his retirement. Hayes says he is very confident that EEOC posters have been placed in at least ten places around the facility, including the administration building on the ground floor, where Graham often came, and the control room where Graham would have to go to obtain clearance as part of Entergy's lockout/tagout program.[7] In response to Hayes' affidavit, Graham repeats his claim that there were no EEOC posters in any of the areas where he worked or the break rooms or shops he frequented. He says the plant site is very large and has a lot of buildings and assumes the posters that were up were not large and opines that ten posters are not enough for an area so large and complex.[8] He submits the affidavit of a former employee who says he did not see any posters informing him of his EEOC rights prior to his separation from Entergy in October 2005.[9]

The statute requires that employers "post and keep posted in conspicuous places upon its premises a notice to be prepared or approved by the Secretary setting forth information as the Secretary deems appropriate to effectuate the purposes of this Act." 29 U.S.C. § 627. Graham presents no evidence from which a reasonable jury could find that Entergy did not comply with the statute.[10] While Graham claims there were no posters in the areas where he worked and took breaks

---

[7] *See* docket entry 8-1 (Affidavit of James Gaylan Hayes).

[8] *See* docket entry 14 at pp. 7-8.

[9] *See* docket entry 15.

[10] The affidavit of Larry Davis, a former employee who separated from Entergy in October 2005 is irrelevant to the 2009-2010 time period involved here.

and that the posters were not large or numerous enough, he cannot establish a genuine issue of material fact as to their existence and Entergy's compliance with the law.

Graham further argues the Court should apply the doctrine of equitable tolling because he was not represented by an attorney in this matter until after he received his right-to-sue letter. He also says he was unaware that Entergy's refusal to allow him to return to work unless he was 100% was constructive termination and its policy was discriminatory in nature. Entergy submits, however, evidence that Graham was represented by counsel when he filed his charge of discrimination. In an EEOC Intake Questionnaire Graham completed on December 21, 2010, he answered "yes" to the question whether he had sought help from an attorney about his situation, and he wrote the name of his son, James Lucas Graham, Attorney at Law.[11] Now he submits an affidavit in which he says he only retained his son after he got his right-to-sue letter and did not discuss with his son/attorney his reasons for retiring or notify him about Entergy's 100% return to work policy.[12]

"It is well-established that 'parties to summary judgment cannot create sham issues of fact in an effort to defeat summary judgment' and that 'a district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before.' This is so because '[o]therwise, any party could head off summary judgment by supplanting previous depositions *ad hoc* with a new affidavit, and no case would ever be appropriate for summary judgment.' . . . the sham exception doctrine is not limited solely to situations when the party submits 'an affidavit contradicting his own earlier testimony.' " *Marathon Ashland Petroleum, LLC v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, Helpers of America, Gen. Drivers,*

---

[11] Docket entry 19 at p. 6, ¶ 16.

[12] Docket entry 14, p. 6.

*Helpers and Truck Terminal Employee Union, Local No. 120*, 300 F.3d 945, 951 (8th Cir. 2002)(internal citations and quotations omitted). The Court finds Graham's affidavit in which he contradicts the statement he made on the EEOC questionnaire fails to establish that he is entitled to equitable tolling. There is no evidence that despite his efforts, Graham was unable to obtain vital information as to the existence of his claims. *See Dring*, 58 F.3d at 1329 ("if a plaintiff were entitled to all the time he needed to be *certain* his rights had been violated, the statute of limitations would never run")(internal quotation and citation omitted).

"[T]he doctrine of equitable estoppel . . . 'comes into play when a defendant takes active steps to prevent a plaintiff from suing on time.' As our court has repeatedly stated, the EEOC limitations period will not be modified on the basis of equitable estoppel unless 'the employee's failure to file in timely fashion is the consequence of either a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'" *Dring, supra,* 58 F.3d at 1329 (internal citations omitted.). The doctrine of equitable estoppel presupposes the plaintiff knows the facts underlying his cause of action. *Id.*

Graham requests the application of equitable estoppel on the basis that Entergy took more than four months to process and approve his retirement request, lulling him into inaction and thus causing him to fail to timely file a charge of discrimination. He says he believed that until his paperwork was complete, he was still employed by Entergy and that because of Entergy's delay in processing his retirement, he had to spend time and energy resolving retirement issues rather than pursuing his disability claim. Entergy asserts Graham's argument is legally and factually insufficient to support equitable estoppel. Entergy argues that the evidence submitted by Graham shows that retirement processing is handled by Entergy Retirement Center in Little Falls, New

Jersey; that retirement processing can be complicated; and that any delay in Graham's retirement was caused by Entergy being provided two different Qualified Domestic Relations Orders.  A review of the evidence shows that while Graham may have applied for retirement effective April 1, 2010, he did not submit any information as to the "correct" Qualified Domestic Order until May 4, 2010,[13] and did not send his final retirement elections back to Entergy until July 1, 2010.[14]  The Court finds there is no credible evidence that Entergy took active steps to delay Graham from filing his EEOC charge.

Graham also asserts a violation of his rights under the Arkansas Civil Rights Act ("ACRA"). When a federal district court has dismissed all of a plaintiff's claims arising under federal law, the court may decline to exercise supplemental jurisdiction over any remaining state-law claims. 28 U.S.C. § 1367(c)(3). Entergy urges the Court to dismiss Graham's state law claims as well because it is clear that they are untimely under the ACRA.  Out of respect for the principles of federalism and for the courts of the State of Arkansas, the Court will exercise its discretion under section 1367© to decline to exercise supplemental jurisdiction with respect to Graham's state-law claims. *See  Condor Corp. v. City of St. Paul,* 912 F.2d 215, 220 (8th Cir.1990) (district court should have declined pendant jurisdiction after dismissing the federal claims because of  "the necessity to provide great deference and comity to state court forums to decide issues involving state law questions.")

**Conclusion**

---

[13] *See* docket entry 20.

[14] *See* docket entry 21 at 11-30.

IT IS THEREFORE ORDERED that Entergy's motion to dismiss/summary judgment [docket entry 2] is hereby granted. Plaintiff's federal claims are dismissed with prejudice. Plaintiff's state-law claims are dismissed without prejudice.

DATED this 19TH day of October, 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE